IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DESTINY MOORE,

                    Plaintiff,                                          OPINION and ORDER

     v.

NATIONAL PRESTO INDUSTRIES, INC.,                                       20-cv-1060-jdp

                    Defendant.

---

Plaintiff Destiny Moore alleges that she was burned when her pressure cooker opened while it was still pressurized, which caused the cooker to forcefully eject its contents. Moore has sued the device's manufacturer, National Presto Industries, Inc., contending that the cooker was defectively designed and that the cooker's warnings were inadequate.

National Presto moves for summary judgment. Dkt. 21. Moore's engineering expert does not identify any defects in the cooker's design or identify a reasonable alternative design that would reduce the risks of harm posed by the product. And Moore has not adduced evidence that the warnings accompanying the cooker were inadequate or that a lack of warning caused her injury. The court will grant National Presto's motion and dismiss the case.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

Plaintiff Destiny Moore received a Presto electric pressure cooker as a housewarming gift. The cooker includes a cover locking system that is designed to allow pressure to build only when the cover is closed and to prevent the cover from being opened until pressure is released.

Two features of the cooker's cover are relevant to Moore's claim. First, the cover contains a quick pressure release valve. The user can open the valve by moving a lever at the top of the unit, thereby releasing the pressure. Second, there is a "float valve" that secures the lid and allows a user to see whether the cooker's internal pressure has been released.[1] *See* Dkt. 30-3, at 6. Pressure inside the cooker pushes the float valve up, raising the blue top of the float valve so that it is visible on the lid, signifying that the unit is pressurized. The raised float valve also obstructs the movement of a spring-loaded locking pin, thus preventing the lid from being opened while the cooker is pressurized. *Id* at 6–7. When the float valve is in the down position, it indicates that the cooker's pressure has been reduced, and the locking pin can move freely, allowing the lid to be removed.

The cooker's user manual tells users that the unit is safe to open only when (1) no steam escapes when the quick pressure release valve is opened with the release lever and (2) the blue float valve has dropped to the down position. The manual warns that opening the cooker when the valve is in the up position could cause the cooker to expel its pressurized contents and cause severe burns.

In December 2018, Moore was using the cooker to prepare mashed potatoes. When the potatoes were finished, Moore turned the cooker's steam release valve to the steam release position and began opening the lid. When Moore applied a small amount of force to the lid, the lid "flew up" and the cooker forcefully ejected its contents. Dkt. 25 (Moore Dep. at 70:5). Moore suffered burns to her right arm. In her deposition, Moore could not recall whether the float valve was in the up or down position when she began opening the cooker lid.

---

[1] The manual refers to this feature as an "air vent/cover lock." Dkt 30-1, at 4. The court will use the term "float valve," the term used by Moore's expert. *See* Dkt. 30-3, at 6.

The court has diversity jurisdiction over this claim under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

ANALYSIS

A federal court exercising diversity jurisdiction applies the law of the forum state if there is no dispute about the choice of law. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002). The parties here invoke Wisconsin law, so that is the law the court applies.

Moore's amended complaint, Dkt. 12-2, asserts three claims: strict liability for defective design, strict liability for inadequate warnings, and negligence. National Presto moves for summary judgment on the grounds that the opinions of Moore's expert, Derek King, are inadmissible under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579 (1993). Moore concedes, implicitly at least, that she needs expert testimony to support any of her product liability claims. The court agrees that whether the cooker's design was defective and whether the defect caused Moore's injuries are matters beyond the knowledge of a lay juror, and thus expert testimony is required. *See City of Cedarburg Light & Water Comm'n v. Allis-Chalmers Mfg. Co.*, 33 Wis. 2d 560, 568, 149 N.W.2d 661, 662 (1967). It's not clear that expert evidence would be needed for the failure-to-warn claim, but Moore relies on her expert to support that claim, too.

In response to National Presto's motion for summary judgment, Moore must come forward with admissible evidence to support every element on which she bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As is often said, summary judgment is the "put up or shut up" moment at which the non-moving party must demonstrate that it has evidence that requires a trial. *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022). In this

3

case, if King's opinions are inadmissible, Moore doesn't have the necessary evidence to support her case and National Presto is entitled to summary judgment.

Under *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), the court must serve as a gatekeeper to ensure that proffered expert testimony meets the requirements of Federal Rule of Evidence 702. Essentially, the gatekeeping function consists of a three-part test: the court must ensure that the expert is qualified, that the expert's opinions are based on reliable methods and reasoning, and that the expert's opinions will assist the jury in deciding a relevant issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). The proponent of expert evidence bears the burden of establishing that the expert's testimony is admissible. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

National Presto does not challenge King's general qualifications, but those are meager. King has a bachelor's degree in mechanical engineering and a master's degree in electrical engineering. Dkt. 30-2 (King's resume). None of his opinions in this case relate to the electronics of the pressure cooker, so his master's degree is irrelevant. His resume cites work in a wide variety of areas, including "pressure vessels," but the work itself is not described in any detail. He's worked for his current employer, Berkeley Engineering and Research, Inc., since 2009. It appears that King is essentially a professional expert witness, which is not a robust professional qualification. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("[I]n determining whether proposed expert testimony amounts to good science, we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office.") Moore's brief contends that King relies on "1 hundred tests performed on a wide variety of the different pressure cookers similar or identical to the one at issue here." Dkt. 29, at 6. But that contention is utterly unsupported by King's report, his resume, or any

other evidence presented to the court.[2] Nevertheless, because National Presto does not expressly challenge King's qualifications, the court will not exclude his testimony on the basis that he is not qualified to offer opinions about the design of pressure cookers.

The court will examine the reliability and helpfulness of King's opinions in the context of the specific claims asserted by Moore.

## A. Design defect

Under Wisconsin law, "[a] product is defective in design if the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer and the omission of the alternative design renders the product not reasonably safe." Wis. Stat. § 895.047(1)(a).

Moore does not squarely identify what about the cooker's design she contends is defective. Moore opens her brief by asserting that the case boils down to whether the cooker can retain pressure even when it appears completely depressurized. Dkt. 29, at 1. But later, Moore suggests that the cooker is defective because the unit's interlock device may fail to prevent the lid from opening. *Id.* at 7. And Moore does not explain how either of these potential mechanical issues are related to a defect in the cooker's design.

The only evidence of any design defect that Moore identifies is the report of her expert, King. Dkt. 27. King opines that the incident Moore described is consistent with a cooker releasing its contents under pressure. But he does not actually opine that the unit is defective

---

[2] This is not the only instance of counsel making unsupported assertions in Moore's brief. Counsel says that Moore was injured while she was preparing mashed potatoes, "a food known to 'bubble,'" citing "Kress Aff., Exhibit D, 48:6-9" for support. Exhibit D is Moore's deposition, and the cited passage says nothing about mashed potatoes being known to bubble.

or that there is any flaw in the cooker's design. Instead, King presents several hypotheses for what might have caused Moore's injures:

> (1) the interlock mechanism may have failed;
>
> (2) an air bubble trapped in the food may have erupted;
>
> (3) the cooling of the top layer of the food may result in "boil over" if the lower layers retain heat;
>
> (4) the lid may have been misaligned.

Dkt. 27, at 7–8.

There are three fundamental problems with King's list of hypotheses. First, some of the hypotheses are inconsistent with any design defect. Air bubbles trapped in the food may occur during normal operation of a pressure cooker. King acknowledged that the owner's manual warns of this phenomenon and instructs users on how to avoid the problem. See Dkt. 30-1, at 5 (owner's manual). Lid misalignment may be caused by user error. The failure of the interlock mechanism may have been caused by a manufacturing defect or post-manufacturing damage or wear (and Moore asserts no claim for manufacturing defect).

Second, King expressly disavows that he has determined that any of the hypotheses actually happened. His report acknowledges that he has not examined Moore's pressure cooker. Dkt. 27 at 6 ("The subject pressure cooker has not been inspected by [Berkeley Engineering and Research]."). King says only that "possibilities exist that remain to be evaluated." The time for evaluating these possibilities was before the deadline for disclosing expert reports.

Third, to prevail on her design defect claim, Moore has to show that the risks of the product could be reduced by a reasonable alternative design. But King does not identify any safer alternative.

Moore contends that, despite King's failure to analyze Moore's pressure cooker, King's opinions are based on sufficient evidence because King cites several internal documents from National Presto. But these documents add nothing meaningful to the report.[3] National Presto has product standards that require that the lid of a pressurized cooker remain sealed against 25 pounds of rotational pressure. King does not suggest that the standard is inadequate. King cites testing evidence (not provided to the court) that the lid would open with 25 pounds of rotational force at .98 PSI internal pressure. It's not clear from King's report what this testing represents, and King does not describe or analyze the testing in any way that would suggest a design defect. King cites evidence that a cooker returned to National Presto had a defective pressure interlock. Dkt. 30-6. But that cooker was well used, and the report does not attribute the failure of the interlock to any design defect. King cites evidence that National Presto improved its interlock design, but he doesn't know whether the improvement was incorporated into Moore's unit. And, in any case, evidence of subsequent remedial efforts would be inadmissible under Federal Rule of Evidence 407.

The court concludes that King's opinions are not based on sufficient facts or data. And, more fundamentally, King did not use reliable methods to analyze the design of the pressure cooker. His report is essentially speculation about possible explanations for the incident in which Moore was injured, and his report fails to establish an essential element of Moore's claim: that a reasonable alternative design would have reduced the risk of injury. The court will grant summary judgment to National Presto on Moore's design defect claims.

---

[3] Moore declined to provide all these documents to the court, citing confidentiality concerns and the protective order. Dkt. 29, at 7 n.1. But the protective order, Dkt. 18, allows for the filing of documents under seal so that the court can evaluate the parties' evidence while maintaining confidentiality.

## B.  Inadequate warnings

"A product is defective because of inadequate instructions or warnings only if the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings renders the product not reasonably safe." Wis. Stat. § 895.047(1)(a). Although the parties assume that expert testimony is required to establish the inadequacy of warnings, it's not clear that this issue is beyond the understanding of a lay juror.

But Moore's failure-to-warn claims fail either way. Moore does not articulate why she believes that the current warnings are inadequate. *See* Dkt. 29, at 8–9. Instead, she says only that King's report creates questions of fact about "the adequacy of the warnings associated with the safe removal of the lid." *Id*. at 9. So even if expert evidence is not strictly required, Moore relies exclusively on King's report to make her case.

But King's report does not say that the cooker's warnings are inadequate. King offers no opinion about the adequacy of the warnings. And, contrary to Moore's assertion, King does not provide a "detailed analysis" of the cooker's warnings. *See* Dkt. 29, at 9. The only warning King mentions in his report is about how air bubbles trapped in food can rise to the top and erupt, even when the unit is completely depressurized. Dkt. 27, at 7. But there is a warning about that phenomenon in the manual, Dkt. 30-1, at 5. King does not say that this warning is inadequate.

King also does not explain how the cooker posed any foreseeable risks of harm or that any risks could have been reduced by providing reasonable instructions. And King does not provide any examples of reasonable alternative warnings. *See Allen v. Am. Cyanamid*, 527 F. Supp. 3d 982, 995 n.3 (E.D. Wis. 2021) (noting that plaintiffs would likely need to provide

8

evidence of reasonable alternative warnings to show that warnings are inadequate under current Wisconsin law). King's report falls far short of establishing that the warnings on the cooker were inadequate.

But even if Moore could show that the warnings were somehow inadequate, she has not established that the inadequate warnings caused her injuries. A missing warning is a substantial factor in causing injury if a reasonable person would have heeded the warning and as a result avoided injury. *See Michaels v. Mr. Heater, Inc.*, 411 F. Supp. 2d 992, 997 (W.D. Wis. 2006) (citing *Tanner v. Shoupe*, 228 Wis. 2d 357, 596 N.W.2d 805, 817-18 (Ct. App. 1999)). The plaintiff has the burden to show that the lack of a warning was a substantial factor in her injuries. *See Morden v. Cont'l AG*, 2000 WI 51, 235 Wis. 2d 325, 355, 611 N.W.2d 659, 673. But Moore identifies no evidence—not even her own testimony—that any additional warning would have avoided her injury.

Because Moore has not adduced evidence that would allow a reasonable jury to conclude that her injuries were caused by inadequate warnings, or that the warnings were inadequate in the first place, the court will grant summary judgment on her failure-to-warn claim.

## C.  Negligence

Moore also bring a claim for negligence. To prevail on this claim, Moore must prove (1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the injury. *Smaxwell v. Bayard*, 2004 WI 101, ¶ 32, 274 Wis.2d 278, 682 N.W.2d 923. In Wisconsin, a manufacturer's duty of care includes the duty to safely design the product so it is fit for its intended purpose, and

the duty to conduct adequate inspections and tests to determine the extent of defects. Wis. Civil Jury Instructions § 3200(2). So the court concludes that National Presto owed Moore a duty of care.

But Moore falters on the breach element. Again, Moore relies exclusively on King's expert report for evidence of a breach. King contends that a reasonable manufacturer would have employed a systematic "Failure Modes and Effect Analysis." King surmises that National Presto failed to perform an adequate Failure Modes and Effect Analysis and that that failure contributed to Moore's injury. But King cites no evidence at all that National Presto failed to conduct a Failure Modes and Effect Analysis. And some of the evidence that King does cite shows that National Presto has product standards, Dkt. 30-5, conducted testing, and tracked consumer complaints and analyzed allegedly defective products. Dkt. 30-6. Once again, King's report provides only rank speculation that National Presto breached any duty to design and manufacture a safe product.

## ORDER

IT IS ORDERED that:

1.  Defendants' motion for summary judgment, Dkt. 21, is GRANTED.

2.  The clerk of court is directed to enter judgment for defendants and close the case.

Entered May 17, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

10